IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PITTSBURGH LOGISTICS SYSTEMS, INC., a Pennsylvania corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Civil Action No. 09-1036 |
| C.R. ENGLAND, INC., a Utah corporation, d/b/a ENGLAND LOGISTICS, INC., ENGLAND LOGISTICS SUPPLY CHAIN ENGINEERING, and TRANS-MAN LOGISTICS, INC., | ) ) ) ) ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Pending before the Court are two motions filed by Defendant C.R. England, Inc. ("England.")  The first, a motion to dismiss (Doc. No. 7, "Mot. Dis."), argues that the suit must be dismissed pursuant to the "first-filed" doctrine or, in the alternative, pursuant to Federal Rule of Civil Procedure 12(b)(7).  In the second, a motion for change of venue, England argues that this case should be transferred pursuant to 28 U.S.C. § 1404(a) from this District to the Eastern District of Michigan.  For the reasons discussed below, the motion to dismiss is denied in its entirety.  However, the Court will stay the case (including a decision on the motion for change of venue) pending the outcome of a motion to dismiss filed by Pittsburgh Logistics Systems, Inc. ("PLS") in a related suit England has filed in the Eastern District of Michigan.

## I.    INTRODUCTION

### A.    Factual Background[1]

Plaintiff Pittsburgh Logistics Systems, Inc., is a Pennsylvania corporation with its headquarters in Rochester, Pennsylvania. Its clients include several industries which require transportation of heavy freight. PLS arranges that transportation for its clients using a network of more than 5,000 independent carriers.

Defendant England is a Utah corporation with its headquarters in Salt Lake City, Utah. In November 2007, England or one of its wholly-owned subsidiaries[2] acquired a Michigan corporation known as Trans-Man Logistics, Inc. ("Trans-Man"), which was a registered freight broker. According to Plaintiff, a freight broker acts as liaison between shippers and licensed motor carriers, determines the shipper's needs, contacts an authorized carrier, and negotiates an acceptable price for shipping the products. Both freight brokers and motor carriers must be registered and licensed by the Federal Motor Carrier Safety Administration. Defendant England is also a registered freight broker.

Beginning in March 2008, England and PLS entered into a

---

[1]   Unless otherwise noted, the facts in this section are taken from the Complaint filed by Pittsburgh Logistics Systems in the Court of Common Pleas of Beaver County, Pennsylvania.

[2]   The subsidiary is alleged to be England Logistics, Inc., also a registered freight broker and a Utah corporation with its headquarters at the same address in Salt Lake City as that of England.

business relationship under which PLS would arrange shipping for certain customers of Trans-Man, now part of England. There was no written contract between the two parties, but pursuant to their course of dealing, PLS paid the independent carriers who shipped freight for England's customers, then invoiced England for the cost of the shipping plus a fee for its services. Between August 2008 and February 2009, England requested PLS to arrange shipping for four of its customers: Hawthorn Manufacturing Company ("Hawthorn"), Citation Corporation ("Citation"), Alliance Casting Co., LLC ("Alliance"), and Intermet Corporation ("Intermet.") PLS arranged shipping for all four customers and, as had been its practice, paid the carriers directly, then invoiced England. England never objected to the invoices submitted by PLS for those customers, but has failed to pay 40 invoices totaling more than $82,000.00.[3]

At some point between November 2007 and February 2009, Trans-Man was merged with another England subsidiary, England Logistics Supply Chain Engineering[4] ("England LSCE.") (Plaintiff's Memorandum of Law in Opposition to Motion to Dismiss, Doc. No. 9, "Plf.'s

---

[3]   There is some discrepancy as to the amount in controversy stated in the various pleadings, ranging from $82,476.35 to $84,276.46. Neither party, however, contests the fact that the cumulative amount is greater than the $75,000 threshold for this Court to have jurisdiction under 28 U.S.C. § 1332.

[4]   England describes "England Logistics Supply Chain Engineering" as "simply a name under which C.R. England, Inc does business in the State of Michigan." (Notice of Removal, Doc. No. 1, ¶ 6.) The precise relationship is irrelevant for purposes of deciding the pending motions.

Memo," Exh. A.)  Sometime after February 2009, PLS unsuccessfully attempted to collect the overdue invoices from England LSCE, and by letter dated June 17, 2009, counsel for Plaintiff advised the England LSCE corporate counsel that it had "no choice but to proceed with legal action."  The letter enclosed a copy of the draft complaint Plaintiff intended to file in the Court of Common Pleas of Beaver County, Pennsylvania, if there was no response by June 24, 2009.  (Id.)  On July 1, 2009, Plaintiff's counsel again wrote to Defendant's counsel, following up on discussions which had occurred in the interim and indicating that "unless England makes arrangement for payment by next Tuesday, July 7, 2009, we will proceed to file suit in the Court of Common Pleas of Beaver County, Pennsylvania to prosecute this action."  (Plf.'s Memo, Exh. B.)

On Saturday, July 4, 2009, England filed suit against PLS and Hawthorn in the United States District Court for the Eastern District of Michigan ("the Michigan suit.")  (Mot. Dis. ¶ 1.)  In that suit, England asserted a claim for breach of contract against Hawthorn and requested a declaratory judgment against Hawthorn and PLS to determine the rights and liabilities between the parties with regard to the alleged contract between PLS and England.  (Id., ¶ 2.)  According to Plaintiff, at no point during their negotiations was PLS ever informed that England intended to file the Michigan suit and its counsel was only advised of that litigation on July 7, 2009.  (Plf.'s Memo, Exh. D.)

4

B.    Procedural Background

PLS filed suit in the Court of Common Pleas of Beaver County on July 9, 2009, alleging that England had breached a contract implied-in-fact between the parties.  Defendant timely removed the suit to the Federal District Court for the Western District of Pennsylvania on August 7, 2009, pursuant to 28 U.S.C. §§ 1441 and 1446, based on complete diversity between the parties[5] and an amount in controversy exceeding $75,000.00.  Plaintiff did not object to the removal.

On August 14, 2009, Defendant filed the now-pending motion to dismiss or, in the alternative, for a change of venue.  The parties have fully briefed the issues and the matter is ripe for decision.

## II.   JURISDICTION AND VENUE

As noted above, this Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332.  Venue is appropriate in this Court since the events giving rise to this suit occurred in the Western District of Pennsylvania.

## III. ANALYSIS

A.    Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(7)

1.    *Defendant's Arguments:*  England argues this case

---

[5]   Defendant asserted in its removal action that the other named Defendants - England Logistics, Inc., England Logistics Supply Chain Engineering, and Trans-Man Logistics, Inc. - were only fictional names under which England did business in Utah and Michigan.  Moreover, England no longer does business as Trans-Man, which has been consolidated with England LSCE.  Thus, there is complete diversity between Plaintiff and Defendants.  However, Plaintiff has not brought suit against any entity other than C.R. England itself.

should be dismissed because Plaintiff has failed to join Hawthorn, Citation, Alliance and Internet (collectively, the "Absent Parties") as defendants. Because they are of diverse citizenship with PLS, subject matter jurisdiction would not be destroyed; moreover, each of the Absent Parties is subject to service of process. (Mot. Dis., ¶¶ 31-32.) As the contracting parties on the bills of lading, the only "contracts" in question, the Absent Parties are responsible for payment of PLS's claims and therefore must be joined as necessary parties under Fed. R. Civ. P. 19(a)(1). Defendant further argues that as the entities which contracted with PLS, the Absent Parties are "indispensable parties" as that term is understood under Fed. R. Civ. P. 19(b).  (Mot. Dis., ¶¶ 33-37.)

    2. *Applicable Law:* Consideration of a motion to dismiss brought under Fed. R. Civ. P. 12(b)(7) for failure to join a party actually begins with Rule 19 which specifies the circumstances in which joinder of a party is compulsory. General Refractories Co. v. First State Ins. Co., 500 F.3d 306, 312 (3d Cir. 2007).  Under Rule 19(a), the court

> first must determine whether the absent [parties] should
> be joined as "necessary" parties under Rule 19(a). If
> they should be joined, but their joinder is not feasible
> inasmuch as it would defeat diversity of citizenship. .
> .we next must determine whether the absent parties are
> "indispensable" under Rule 19(b).  Should we answer this
> question in the affirmative, the action cannot go
> forward.

General Refractories, id.

    "Required parties" under Rule 19(a) are those who are "subject

6

to service of process and whose joinder will not deprive the court of subject-matter jurisdiction." Fed. R. Civ. P. 19(a)(1). In considering this clause, the court first determines whether "in that person's absence, the court cannot accord complete relief among existing parties." Fed. R. Civ. P. 19(a)(1)(A). At this step, the court limits its inquiry to whether it can "grant complete relief to persons *already named* as parties to the action; what effect a decision may have on absent parties is immaterial." General Refractories, 500 F.3d at 313 (emphasis in original); Huber v. Taylor, 532 F.3d 237, 248 (3d Cir. 2008). Alternatively, the court should consider whether the absent party "claims an interest relating to the subject of the action and is so situated that disposing of the action in that person's absence may (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1)(B). If an absent party is deemed to be necessary under either of these two alternatives, it must be joined if feasible, i.e., it is subject to service of process and its joinder does not deprive the court of jurisdiction. General Refractories, 500 F.3d at 313; *see also* Janney Montgomery Scott, Inc. v. Shepard Niles, Inc., 11 F.3d 399, 405 (3d Cir. 1993).

If a party is not found to be necessary, the court's analysis

stops at that point because a party cannot be "indispensable" if it is not "necessary." *See* Janney, 11 F.3d at 405 (the determination that joinder is compulsory under Rule 19(a) is a "necessary predicate" to determining that it is indispensable under Rule 19(b).)  However, if joinder of a necessary absent party is not feasible, the court must then determine whether the absent party is "indispensable," applying the four factors set out in Fed. R. Civ. P. 19(b).[6]  *See* Liggon-Redding v. Am. Sec. Ins. Co., CA No. 06-227, 2009 U.S. Dist. LEXIS 87331, *10 (M.D. Pa. Sept. 23, 2009); General Refractories, 500 F.3d at 320-321.  If an indispensable party cannot be joined, the "action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b).  Where the court's jurisdiction arises from diversity, "the question of whether a party is necessary or indispensable is a question of federal law."  Huber, 532 F.3d at 247.

In reviewing a Rule 12(b)(7) motion to dismiss, the court must

---

[6]  Pursuant to Rule 19(b), "the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed.  The factors for the court to consider include:
(1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
(2) the extent to which any prejudice could be lessened or avoided by:
     (A) protective provisions in the judgment;
     (B) shaping the relief; or
     (C) other measures;
(3) whether a judgment rendered in the person's absence would be adequate; and
(4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.
Fed. R. Civ. P. 19(b).

accept all factual allegations in the complaint as true and draw
all reasonable inferences therefrom in favor of the non-moving
party.  <u>Jurimex Kommerz Transit G.M.B.H. v. Case Corp</u>., No. 02-
1916, 2003 U.S. App. LEXIS 7690, *4-*5 (3d Cir. April 23, 2003);
*see also* <u>Shahin v. Darling</u>, No. 09-3298, 2009 U.S. App. LEXIS
23829, * 4 (3d Cir. Oct. 29, 2009), *quoting* <u>Ashcroft v. Iqbal</u>, ___
U.S. ____, 129 S. Ct. 1937, 1949 (2009), for the principle that
"[t]he assumption of truth does not apply, however, to legal
conclusions couched as factual allegations or to '[t]hreadbare
recitals of the elements of a cause of action, supported by mere
conclusory statements.'"  A court making a Rule 19 determination
may consider evidence outside the pleadings.  <u>Jurimex Kommerz</u>
<u>Transit G.M.B.H. v. Case Corp.</u>, CA No. 00-83, 2001 U.S. Dist. LEXIS
10551, *6 (D. Del. July 23, 2001).  The moving party bears the
burden of showing that a non-party is both necessary and
indispensable.  <u>Develcom Funding, LLC v. Am. Atl. Co.</u>, CA No. 09-
1839, 2009 U.S. Dist. LEXIS 81960, *5 (D. N.J. Sept. 9, 2009).

    3.  *Plaintiff's Arguments:*  Plaintiff does not dispute
Defendant's assertions in the Motion to Dismiss that Hawthorne is
an Ohio corporation, Citation and Intermet are Delaware
corporations, and Alliance is a Delaware limited liability company[7]

---

[7]  We note that England has not established that the members of
the Alliance LLC do not include any citizens of Pennsylvania.  For
purposes of establishing jurisdiction, most circuit courts of appeal
have treated LLCs as partnerships and thus citizens of every state in
which its members are citizens.  *See* <u>Kimberly-Clark Pa., LLC, v. Del.</u>

or that none of the Absent Parties has a principal place of business in Pennsylvania. (Mot. Dis. ¶ 19; Plf.'s Memo at 18-19.) PLS contends, however, that none of the arguments raised by England are persuasive because (1) complete relief can be afforded to the present parties in the litigation as it now stands, thus precluding application of Rule 19(a)(1); (2) contrary to Defendant's argument, the interests of the Absent Parties would not be impaired nor would they be impeded in their ability to protect their interests in this matter even if further litigation between them and England were necessary, precluding Rule 19(a)(1)(B)(i); and (3) further litigation would not expose PLS or England to a substantial risk of incurring double, multiple or otherwise inconsistent obligations if the Absent Parties did pursue further litigation, precluding Rule 19(a)(1)(B)(ii).

4. *Analysis and Conclusion:* We conclude that none of the Absent Parties is necessary to resolution of the dispute between England and PLS under either prong of Rule 19(a)(1) and, consequently, need not be joined for this litigation to continue.

First, the suit brought by PLS does not state any allegations against the Absent Parties. PLS does not seek any relief from them and does not claim that any of them was a party to the implied-in-

---

County Reg'l Water Quality Control Auth., 527 F. Supp.2d 430, 432-433 (E.D. Pa. 2007), noting the absence of controlling precedent on this question from either the Supreme Court or the Third Circuit Court of Appeals.

fact contract which allegedly existed between PLS and England.   In short, there is nothing for the court or a jury to decide with regard to the liability of an Absent Party to PLS.   *See* Spring-Ford Area Sch. Dist. v. Genesis Ins. Co., 158 F. Supp.2d 476, 483 (E.D. Pa. 2001) (where no allegations were raised against the absent parties, they were not necessary parties under Rule 19(a)(1)(A).)

This suit is based solely on breach of an alleged implied-in-fact contract between PLS and England.   If PLS successfully persuades a jury that such a contract existed and England breached that contract by failing to pay PLS for services rendered to four of England's customers at England's direction, the jury will award PLS the remedy it seeks, i.e., payment of more than $82,000, which would be "complete relief."

Conversely, England argues that it was, at all times, acting only as an agent for each of the Absent Parties, not their broker, and in order to properly determine the rights and liabilities of all parties under the alleged implied-in-fact contract, the Absent Parties must be joined.   (Brief in Support of Motion to Dismiss, Doc. No. 8, "Def.'s Brief," at 11-12.)   As noted above, under Rule 19(a)(1)(A), the effect of a determination on absent parties is irrelevant.   Moreover, under agency law, unless there is evidence showing that England accepted personal responsibility for the payment of the Absent Parties' bills of lading or invoices, it cannot be held liable for that payment.   *See* Poulos v. Nicolaides,

No. 05-4093, 2007 U.S. App. LEXIS 15198, *6 (3d Cir. June 26, 2007). England may assert an affirmative defense based on this theory of agency even if the Absent Parties are not represented. In sum, England can be granted "complete relief" if it is able to convince a jury *either* that there was no contract implied-in-fact *or* that it was simply the agent for the Absent Parties.

As a third alternative, even if, as England has asserted in the Michigan suit, Hawthorn is contractually liable to England for indemnification, that relationship does not establish Hawthorn (or the other Absent Parties if comparable indemnification contracts exist between them and England) as a necessary party to the action pending here. *See* <u>Wausau Ins. Cos. v. Liquori</u>, CA Nos. 05-2706 and 05-3678, 2006 U.S. Dist. LEXIS 64392, *13 (E.D. Pa. Sept. 7, 2006) *quoting* <u>Special Jet Services, Inc., v. Federal Ins. Co.</u>, CA No. 79-697, 1979 U.S. Dist. LEXIS 9681, * 10 (W.D. Pa. Sept. 20, 1979), for the principle that "[g]enerally, a third party is not a necessary or indispensable party to an action to determine the rights of other parties under a contract, simply because the third party's rights or obligations under an entirely separate contract will be seriously affected by the action." According to Third Circuit precedent in <u>Liberty Mut. Ins. Co. v. Treesdale, Inc</u>., 419 F.3d 216, 230 (3d Cir. 2005), the possibility that one or more of the Absent Parties may be obligated to indemnify or may be independently sued by England if the latter is found liable to PLS

does not make them necessary parties to this action.  And the fact
that such litigation would have to be pursued separately may be
inconvenient for England, but is not sufficient to trigger Rule 19.
See XL Specialty Ins. Co. v. Interstate Indus. Corp., CA No. 09-82,
2009 U.S. Dist. LEXIS 72927, *13-*14 (D. N.J. Aug. 18, 2009).

Turning to the second prong of Rule 19(a)(1), "a party is only
'necessary' if it has a legally protected interest, and not merely
a financial interest, in the action." Spring-Ford, 158 F. Supp.2d
at 483.  In its analysis of Rule 19(a)(1)(B), unlike analysis of
Rule 19(a)(1)(A), the court *does* consider the effect the resolution
of the dispute between the current parties will have on the Absent
Parties.  Huber, 532 F.3d at 248.  We note initially that none of
the Absent Parties - even Hawthorn which is a named defendant in
the Michigan suit - has claimed an interest relating to the subject
matter of this litigation.

Here, Defendant argues that the Absent Parties have interests
that would be impeded or impaired if they were not made part of
this suit.  First, if England were found to have been an agent for
of the Absent Parties (rather than their broker), they would
ultimately be liable for the amounts due to PLS.  However, they
would be precluded from re-litigating any material issues because
England's status as their agent would put them in privity with
England and collateral estoppel would apply. (Def.'s Brief at 13.)

The Court of Appeals has already addressed this specific

13

question and concluded it is inappropriate for this court to consider issues of privity and collateral estoppel in determining whether an absent party is necessary based on its purported interest in the litigation at hand. As stated in <u>Huber</u>

> given the highly factual nature of a privity analysis, courts engaging in Rule 19 analysis should not 'theorize' as to whether an absent party is in privity with a party to an action because such an analysis would be premature.

<u>Huber</u>, 532 F.3d at 250, *citing* <u>Janney</u>, 11 F.3d. at 410 (issue preclusion, i.e., collateral estoppel, generally applies only to "persons who either were parties to [a] prior action or shared the same interest as the parties who were present in the prior action"); *see also* <u>Johnson & Johnson v. Coopervision, Inc.</u>, 720 F.Supp. 1116, 1124 (D. Del. 1989) ("It would be premature for this Court to endeavor to decide whether [the absent party is] in privity in bringing the instant action, for purposes of determining the preclusive effect of this action on a later lawsuit, where the potential later lawsuit is yet to be brought, and where the instant action has not even run its course yet.")

The <u>Huber</u> Court reiterated its holding in <u>Janney</u> that if the preclusive effect of an action on any subsequent litigation would be speculative, joinder of an absent party is not required under this provision of Rule 19; that is, the mere possibility of issue preclusion is not enough to satisfy Rule 19(a)(1)(B). <u>Id.</u> at 251, noting that the district court had erred by finding that the outcome of the pending lawsuit "might in some unspecified way have

14

a preclusive effect with respect to some issue material to [the absent parties'] rights in some future lawsuit that may or may not be filed;" *see also* <u>Graco, Inc. v. PMC Global, Inc.</u>, CA No. 08-1304, 2009 U.S. Dist. LEXIS 26845, *28-*32 (D. N.J. Mar. 31, 2009), applying the <u>Huber</u> analysis.

England further argues that if it is found not to be the agent of the Absent Parties, they would be subject to a second suit by PLS on the bills of lading which England claims are the true contracts between PLS and the four customers.  Because the Absent Parties would be also be required to indemnify England,[8] they could be subjected to double liability on claims by both England and PLS or its carriers, thus satisfying Rule 19(a)(1)(B)(ii).   (Def.'s Brief at 13-14.)

Contrary to Defendant's argument, a careful reading of the second clause of Rule 19(a)(1)(B) reveals that the court is not to be concerned about whether an absent party would be subject to the risk of multiple or inconsistent obligations, but rather "*an existing party*." *See* <u>Am. Home Mortgage Corp. v. First Am. Title Ins. Co.</u>, CA No. 07-1257, 2007 U.S. Dist. LEXIS 83337, *23 (D. N.J. Nov. 9, 2007) (the fact that an existing party may have to claim contribution or indemnity from non-parties does not mean it is

---

[8]   This argument assumes the existence of indemnification clauses in each of the contracts between the Absent Parties and England comparable to that in the contract with Hawthorn, but no such contracts are in evidence at this point.

subject to multiple or inconsistent obligations); Graco, 2009 U.S. Dist. LEXIS 26845 at *32-*33.   England has not explained how, because of any relationship between itself and one or more of the Absent Parties, it or PLS would be subjected to double, multiple or other inconsistent obligations.

We conclude that Hawthorn, Citation, Alliance and Intermet are not required parties to this litigation under any provision of Rule 19(a)(1).   Consequently, we need not consider Rule 19(b) or the other arguments of the parties on this question.[9]   Defendant's motion to dismiss is therefore denied insofar as it is based on Rule 12(b)(7).

B.   Motion to Dismiss under the "First Filed" Doctrine

1.   *Defendant's Arguments:* As an alternative basis for dismissal, England argues that its suit in the Eastern District of Michigan involves the same subject matter as the case now pending before this Court.   In addition, the underlying contracts between England and Hawthorn which are at the root of the dispute between England and PLS provide that the law of Michigan is to apply to the performance of those contracts and that Michigan has exclusive jurisdiction over any action to enforce the agreements.   (Mot. Dis.

---

[9] As Plaintiff points out, despite England's position that the Absent Parties are necessary and indispensable in this lawsuit, this argument is undercut by the fact that three of the four same parties are not named in the Michigan suit even though all are presumably subject to personal jurisdiction there as well as in Pennsylvania. *Compare* Thayer/Patricof Educ. Funding, LLC v. Pryor Res., 196 F. Supp.2d 21, 29 (D. D.C. 2002), describing the same argument made in a case with a parallel set of facts as "curious" and "ringing hollow."

¶¶ 4, 6, 10, 13-14.)  Therefore, the case before this court should be dismissed because the Michigan suit, which will resolve the issues between England and PLS, was the first to be filed.  (Mot. Dis. ¶¶ 28-29.)

       2.  *Applicable Law:*  In <u>Crosley Corp. v. Hazeltine Corp.</u>, 122 F.2d 925, 929-930 (3d Cir. 1941), the U.S. Court of Appeals for the Third Circuit formally adopted a rule first set out by the Supreme Court in <u>Smith v. M'Iver</u>, 22 U.S. 532, 535 (1824), that is, "[i]n all cases of concurrent jurisdiction, the Court which first has possession of the subject must decide it."  The Third Circuit acknowledged that "[t[he party who first brings a controversy into a court of competent jurisdiction for adjudication should, so far as our dual system permits, be free from the vexation of subsequent litigation over the same subject matter." <u>Crosley</u>, <u>id.</u> at 930.  The purpose of this so-called first-filed rule is to "encourage[] sound judicial administration and promote[] comity among federal courts of equal rank" as well as allowing "all the litigants to have a single determination of their controversy, rather than several decisions which if they conflict may require separate appeals to different circuit courts of appeals."  <u>EEOC v. Univ. of Pennsylvania</u>, 850 F.2d 969, 971, 974 (3d Cir.), *cert. granted in part*, 488 U.S. 992 (1988).

However firm this rule may appear to be, a few special circumstances permit the court in which the second suit was filed

to retain jurisdiction.  Because the rule is based on equitable principles, a court may decline to apply the first-filed rule after it considers "what is right and equitable under the circumstances and the law,. . .directed by the reason and conscience of the judge to a just result."  EEOC, 850 F. 2d at 977 (internal quotation omitted.)  Therefore the court looks to the actions of all relevant parties in determining the applicability of the rule.  Portfolio Techs., Inc. v. Intellx, Inc., CA No. 05-159, 2005 U.S. Dist. LEXIS 42469, *12 (W.D. Mich. May 19, 2005), *citing* EEOC, id.  Bad faith, inequitable conduct, forum shopping, filing in anticipation of suit by the opposing party in a less favorable forum, "procedural fencing," and "deceptive gamesmanship" are all factors which may constitute special circumstances allowing the second-filed suit to proceed. *See* Alltrade, Inc. v. Uniweld Prods., Inc., 946 F.2d 622, 628 (9th Cir. 1991); EEOC, 850 F.2d at 972; and Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Assocs., No. 00-3183, 2001 U.S. App. LEXIS 17225, *11-*13 (6th Cir. July 31, 2001).  Courts also consider the adequacy of the relief available in the alternative forum; promotion of judicial efficiency; the likelihood of prompt resolution in each forum; the convenience of the parties, counsel and witnesses; the possibility of prejudice to any party; and the relative development of the two suits.  Unilease Computer Corp. v. Major Computer, Inc., No. 88-0682, 1989 U.S. Dist. LEXIS 7570, *8-*9 (S.D. N.Y. July 6, 1989).

Unless one of the relatively rare exceptions applies, the court with jurisdiction over the second-filed suit will defer to the other if the two matters reflect the same chronology, identity of parties and similarity of issues. Alltrade, 946 F.2d at 625-627. The factors need not be identical but should reflect "substantial overlap between the two suits." Davis v. Hartford Ins. Co., CA No. 09-5852, 2009 U.S. Dist. LEXIS 95510, *3 (E.D. La. Oct. 14, 2009) (internal quotation omitted.)

The decision to apply the first-filed rule rests within the discretion of the district court. EEOC, 950 F.2d at 971; Zide Sport Shop, 2001 U.S. App. LEXIS 17225 at *8. The party opposing the application of the rule (herein, Plaintiff PLS) must show that special circumstances bar its application. Glaxosmithkline Consumer Healthcare, LP v. Merix Pharm. Corp., CA No. 05-898, 2005 U.S. Dist. LEXIS 40007, *28 (D. N.J. May 10, 2005). In deciding a motion to dismiss or stay under the first-filed doctrine, the court considers the same factors as those applicable to a motion to transfer pursuant to 28 U.S.C. § 1404(a). Maximum Human Performance, Inc. v. Dymatize Enters., CA No. 09-235, 2009 U.S. Dist. LEXIS 76994, *8 (D. N.J. Aug. 27, 2009).

     3.   *Plaintiff's Arguments:*   PLS argues that this case should not be dismissed because England's filing of the Michigan suit was anticipatory, inequitable, and in bad faith. (Plf.'s Memo at 6-12.) Moreover, if this case were dismissed and PLS successful

in its now-pending motion to dismiss the Michigan suit, Plaintiff would be compelled to re-file suit to pursue its claims against England. (Id. at 12-13.)

      4.   *Analysis and Conclusion:*  We begin by considering the claims and allegations of the parties in the two suits under consideration in order to determine if there is substantial overlap between the two.  As noted above, Plaintiff PLS has sued England for breach of a contract implied-in-fact between the parties based on the course of dealing between PLS and England or England's wholly-owned subsidiary England LSCE, which has merged with or absorbed Trans-Man.  None of the England clients for whom PLS provided shipping services - Hawthorn, Citation, Alliance, and Intermet — is named as a defendant.  Both Trans-Man and England are alleged to be "brokers"[10] registered with the Federal Motor Carrier Safety Administration, a status which allows the party to perform both brokerage services, i.e., arranging transportation on behalf of its clients, and non-brokerage services such as reviewing and auditing freight bills and collecting funds for payment to the shipping company.  *See* Oak Harbor Freight Lines, Inc. v. Sears Roebuck & Co., 513 F.3d 949, 952 (9th Cir. 2008), 49 C.F.R. § 371.2,

---

[10]  "The term 'broker' means a person, other than a motor carrier or an employee or agent of a motor carrier, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation."  49 U.S.C. § 13102(2).

and 49 U.S.C. § 13102(2).

In the Michigan suit, England alleges that it was not a broker acting on behalf of Hawthorn when arranging for transportation by PLS, but simply Hawthorn's agent. Therefore, under an agreement between Trans-Man and Hawthorn (as modified after England acquired Trans-Man), Hawthorn was responsible for paying PLS for its services rather than England. England first claims a breach of its contracts with Hawthorne in that the latter failed to pay its freight bill invoices and fulfill other legal obligations. England therefore requests the Michigan court to enter judgment against Hawthorn for costs attributable to Hawthorn's failure to pay various shippers, including PLS. (Mot. Dis., Exh. 1, complaint in the Michigan suit.) Second, England seeks a declaratory judgment that it was acting solely as an agent (not a broker) for Hawthorn in connection with arranging for PLS to ship its goods; that no contract exists between itself and PLS for shipping Hawthorn's goods; and that its only obligation is to transmit payment to PLS if and when Hawthorn pays the outstanding amount of $84,276.35. (Id.)

We conclude that there is substantial overlap between the Michigan suit and the suit brought by PLS in this court in that the parties are identical, with the addition of Hawthorn in Michigan and at least one of the issues is identical, that is, whether an implied contract existed between PLS and England for shipping

21

Hawthorn's goods.   The cases diverge at the next point, however –
here, PLS claims that because England was acting as a broker for
Hawthorn, it is liable for the unpaid invoices; on the other hand,
England in the Michigan suit claims that it was merely Hawthorn's
agent and Hawthorn is ultimately liable for payment.   Were both
cases to proceed independently, the two courts might arrive at
diametrically opposed conclusions regarding not only the existence
of an implied contract, but also England's status as broker or
agent and thus who is responsible for the unpaid invoices.

Numerous courts in this circuit and elsewhere have concluded
that facts parallel to those established herein constitute evidence
of bad faith sufficient to allow the court in which the second suit
has been filed to retain jurisdiction.   *See*, e.g., <u>FMC Corp. v.
AMVAC Chemical Corp.</u>, 379 F. Supp.2d 733 (E.D. Pa. 2005);[11]
<u>Drugstore-Direct, Inc. v. Cartier Div.</u>, 350 F. Supp.2d 620 (E.D.
Pa. 2004); <u>One World Botanicals v. Gulf Coast Nutritionals</u>, 987
F.Supp. 317 (D. N.J. 1997); <u>EEOC</u>, *supra*; and <u>Mission Ins. Co. v.
Puritan Fashions Corp.</u>, 706 F.2d 599 (5th Cir. 1983).   In each of
those cases, the parties had been in settlement negotiations and
one party had given the other a deadline by which the dispute was
to be resolved as an alternative to litigation; in each case, the
opposing party preemptively filed suit shortly before the deadline.

---

[11]   *See also* additional cases cited at <u>FMC</u>, 379 F. Supp.2d at 744,
n. 23.

Such action reflects not only bad faith by the first-filing party, but also satisfies the definition of an anticipatory suit, a type of forum-shopping. "A suit is 'anticipatory' for the purposes of being an exception to the first-to-file rule if the plaintiff in the first-filed action filed suit on receipt of specific, concrete indications that a suit by the defendant was imminent." *See* Intersearch Worldwide, Ltd. v. Intersearch Group, Inc., 544 F. Supp.2d 949, 960 (N.D. Cal. 2008) (internal quotation omitted.)

Here, two letters from counsel for PLS dated June 17 and July 1, 2009, clearly indicated that suit would be filed in the Court of Common Pleas of Beaver County, Pennsylvania, if arrangements had not been made to satisfy the outstanding invoices by July 7, 2009. In fact, counsel for PLS provided a copy of the proposed complaint. Counsel for England then filed suit three days later, on a legal holiday, seeking resolution of the same questions, albeit posed in a different context, as those in the PLS complaint. This chronology is indicative of an improper first filing. *See* FMC Corp., 379 F. Supp.2d at 744 ("[A] second-filing party may have a strong case that the initial filing was improper if the first-filing party initiated its suit within the response period provided in a recent. . .letter.")

The impropriety of the first-filed suit is heightened when the would-be defendant files a declaratory judgment action. The Declaratory Judgment Act, 28 U.S.C. § 2201, allows a person caught

in a controversy to obtain resolution of the dispute instead of being forced to await action by the opposing party.  IMS Health, Inc. v. Vality Tech. Inc., 59 F. Supp.2d 454, 463 (E.D. Pa. 1999) (internal citations omitted).  When both parties have taken apparently irreconcilable points of view on a question of law (as the parties have here on the broker vs. agent question) and one has advised the other that it will filed suit on a specific date, a pre-emptory filing of a declaratory judgment action is generally considered to have been undertaken in bad faith.  See IMS Health, 59 F. Supp.2d at 463 (bad faith found where a declaratory judgment action was filed "in anticipation of impending litigation and motivated solely by considerations of forum shopping.") (Internal quotation omitted.)

In sum, while we recognize the need for judicial economy and federal comity which would generally lead us to relinquish jurisdiction in this matter, we conclude England's filing of the Michigan suit was anticipatory and done solely for the purpose of attempting to obtain a forum which it perceived as more favorable for itself.  Consequently, we decline to dismiss this case in favor of first-filed suit in Michigan.

We will, however, stay this matter and await the outcome of Plaintiff's motion to dismiss now pending in the Michigan suit. PLS has moved to dismiss the claims against it on the grounds that England's declaratory judgment action does not satisfy any of the

five factors a court must consider when deciding such an action.
(*See* Plf.'s Memo, Exh. 6.)  If the Michigan court agrees with PLS
and dismisses England's suit in its entirety or dismisses PLS as a
defendant in that case, we can proceed with the action filed in
this case.   In the latter situation, we will then consider
Defendant's motion to transfer venue (Doc. No. 5.)

   An appropriate Order follows.

November  9*th*  , 2009

William L. Standish
United States District Judge

25