IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PITTSBURGH LOGISTICS SYSTEMS, INC., )
   a Pennsylvania corporation,     )
                                  )
          Plaintiff,         )
                                  )
         vs.              ) Civil Action No. 09-1036
                                  )
C.R. ENGLAND, INC., a Utah    )
   corporation, d/b/a ENGLAND   )
   LOGISTICS, INC., ENGLAND     )
   LOGISTICS SUPPLY CHAIN       )
   ENGINEERING, and TRANS-MAN   )
   LOGISTICS, INC.,           )
                                  )
         Defendant.        )

## MEMORANDUM OPINION

On November 9, 2009, this Court denied a motion to dismiss filed by Defendant C.R. England, Inc. ("England"), and stayed the case until the U.S. District Court for the Eastern District of Michigan ("the Michigan court") decided a motion to dismiss filed by Pittsburgh Logistics Systems, Inc. ("PLS") in a related suit brought by England there. As directed in an Order of the same date (Doc. No. 12), the parties advised the Court on December 1, 2009, that on November 25, 2009, the Michigan court had approved a stipulated order of dismissal of England's claims against PLS. We now consider England's pending motion for change of venue (Doc. No. 5) and will deny that motion.

## I.    INTRODUCTION

The factual and procedural background of this case is set forth in the Memorandum Opinion of November 11, 2009 (Doc. No. 11)

and will not be reiterated here in detail.  Succinctly stated, PLS claims that between August 2008 and February 2009, England and PLS had an unwritten agreement regarding freight shipments for some of Defendant's customers, specifically Hawthorn Manufacturing Company ("Hawthorn), Citation Corporation ("Citation"), Alliance Casting Co., LLC ("Alliance"), and Intermet Corporation ("Intermet.") Pursuant to the parties' course of dealing, PLS paid the independent carriers who shipped freight for these customers, then invoiced England for the cost of the shipping plus a fee for its services.  England never objected to the invoices submitted by PLS for those four customers, but failed to pay some 40 invoices totaling more than $82,000.00.

After unsuccessful attempts to collect the overdue invoices, counsel for Plaintiff advised Defendant's corporate counsel in June 2009 that PLS had no choice but to proceed with legal action. After further discussions between the parties and a second letter advising that PLS intended to file suit in the Court of Common Pleas of Beaver County, Pennsylvania, unless England arranged to pay the outstanding invoices by July 7, 2009, England filed suit against PLS and Hawthorn in the United States District Court for the Eastern District of Michigan on July 4, 2009 ("the Michigan suit.")  The gist of the Michigan suit was a claim for breach of contract against Hawthorn and a declaratory judgment action seeking to determine the rights and liabilities among the parties with

regard to the alleged contract between PLS and England.  PLS then filed suit in the Court of Common Pleas of Beaver County on July 9, 2009, alleging that England had breached a contract implied-in-fact between the parties.  Defendant timely removed the suit to this Court pursuant to 28 U.S.C. §§ 1441 and 1446, based on complete diversity between the parties and an amount in controversy exceeding $75,000.00.  On August 14, 2009, Defendant filed the now-pending motion for change of venue.

## II.   JURISDICTION AND VENUE

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332.  Venue is appropriate in this Court since at least some of the events giving rise to this suit occurred in the Western District of Pennsylvania.

## III. LEGAL STANDARD

England's motion for a change of venue is brought pursuant to 28 U.S.C. § 1404(a) which provides that "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  While the statute provides a court with "broad discretion to determine on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer," a motion to transfer a civil matter out of the venue where the plaintiff originally filed suit should not be granted lightly. Sandvik AB v. Rockmore Int'l, Inc., CA No.

3

05-575, 2005 U.S. Dist. LEXIS 31583, *4 (M.D. Pa. Nov. 28, 2005), *quoting* Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995). Consequently, the moving party has the burden to establish that the forum to which it proposes the case be moved is not only a proper forum but that a balancing of the interests of the parties weighs in favor of transferring the case there. Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970); *see also* High River Ltd. P'ship v. Mylan Labs., Inc., 353 F. Supp.2d 487, 492 (M.D. Pa. 2005) ("the moving party is not required to show truly compelling circumstances for change of venue, but rather that all relevant things considered, the case would be better off transferred to another district") (internal quotations and alterations omitted.)

Once the court has determined that the proposed alternative venue is one in which the suit "might have been brought," it must also consider a number of public and private factors which reflect the relevant burdens and interests of the parties. The private interests include the forum preferences of each party; the forum in which the claim arose; the convenience of the parties as reflected in their relative physical and financial conditions; the availability or unavailability of witnesses; and the location of relevant books and records to the extent these could not be produced in the original forum. Jumara, 55 F.3d at 879 (internal citations omitted.) Public factors include the enforceability of the judgment; aspects of the particular case which would make a

4

trial easier, more expeditious, or less expensive in one forum than in the other; administrative or timing difficulties arising from court congestion; "the local interest in deciding local controversies at home;" the public policies of the competing fora; and the familiarity of the trial judge with applicable state law in diversity cases.   _Jumara_, _id._ at 879-880 (internal citations omitted.)   The sum total of these factors must not merely permit the transfer, but must weigh heavily in its favor.   _See_ _Gulf Oil Co. v. Gilbert_, 330 U.S. 501, 508 (1947) ("unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.")

     In considering a motion to transfer under § 1404(a), the court may consider other relevant evidence, e.g., affidavits submitted by the parties, but must view all facts in the light most favorable to the party opposing the transfer.   _Fellner v. Phila. Toboggan Coasters, Inc._, CA No. 05-2052, 2005 U.S. Dist. LEXIS 23839, *4 (E.D. Pa. Oct.18, 2005).

**IV.  ANALYSIS**

     A.   Appropriateness of the Proposed Alternative Forum

          Defendant argues that this case could have been brought in the Eastern District of Michigan inasmuch as England has offices in Taylor, Michigan, located within that district.   Thus, the corporation is subject to the personal jurisdiction of the Michigan court and is considered a resident of the district for purposes of

5

determining permissible venues.   (Brief in Support of Motion for
Transfer of Venue, Doc. No. 6, "Def.'s Brief," at 3, *citing* 28
U.S.C. § 1391(a)(1) and (c).[1])   PLS does not dispute this argument
in opposing the transfer.   (*See* Doc. No. 10, "Plf.'s Memo.")

A plaintiff may bring an action in any federal district in
which the court has subject matter jurisdiction over the claims,
personal jurisdiction over the parties, and the location is a
proper venue.   A transfer is authorized by § 1404(a) "only if the
plaintiff had an 'unqualified right' to bring the action in the
transferee forum at the time of the commencement of the action;
i.e., venue must have been proper in the transferee district and
the transferee court must have had power to command jurisdiction
over all of the defendants." <u>Shutte</u>, 431 F.2d at 24; *see also* <u>High
River Ltd. P'ship</u>, 353 F. Supp.2d at 493 ("the moving party must
demonstrate that venue, personal jurisdiction, and subject matter
jurisdiction would all have been proper in the proposed transferee
district.")   We find no reason to believe this suit could not have
been brought in the Michigan court, thus the first prong of the

---

[1]   In cases based on diversity jurisdiction, venue is proper in
any of the following federal judicial districts: (1) one in which any
defendant resides, if all defendants reside in the same State, (2) one
in which "a substantial part of the events or omissions giving rise to
the claim occurred, or a substantial part of property that is the
subject of the action is situated," or (3) one in which any defendant
is subject to personal jurisdiction at the time the action is
commenced, if there is no other district in which the action may be
brought.   28 U.S.C. § 1391(a).   Under § 1391(c), a corporate defendant
is "deemed to reside in any judicial district in which it is subject
to personal jurisdiction at the time the action is commenced."

<u>Jumara</u> test is satisfied and we turn to the more challenging analysis of the private and public factors.

    B.   <u>Private Factors</u>

        1.   *Preferences of the parties:* Plaintiff, whose corporate headquarters are located in Rochester, Pennsylvania, originally brought suit in the Court of Common Pleas of Beaver County, reflecting its preference for these matters to be litigated in this district.   Defendant is a Utah corporation with its corporate headquarters in Salt Lake City, Utah, and subsidiary offices in Taylor, Michigan.   It has stated a preference for litigating these matters in Michigan, primarily because at the time the motion to transfer was filed, the related case was pending the Eastern District of Michigan against Hawthorn and PLS.

    Courts generally find that ongoing related litigation in the proposed transferee forum is a significant factor in favor of transfer.   *See*, e.g., <u>Schiller-Pfeiffer, Inc. v. Country Home Prods.</u>, CA No. No. 04-1444, 2004 U.S. Dist. LEXIS 24180, *30 (E.D. Pa. Dec. 1, 2004) (citing cases in which courts have concluded this factor alone is a compelling reason to justify granting the motion to transfer); and <u>Weber v. Basic Comfort</u>, 155 F. Supp.2d 283, 286 (E.D. Pa. 2001) ("This consideration is powerful enough to tilt the balance in favor of transfer even when the convenience of parties and witnesses would suggest the opposite.")

    However, as noted above, the Michigan suit has been dismissed,

thus negating any compelling reason to disregard Plaintiff's choice of forum, a factor which courts in this circuit have repeatedly described as "paramount." *See*, e.g., <u>Shutte</u>, 431 F.2d at 25 (it is "black letter law" that the court will give "paramount consideration" to the plaintiff's choice of forum as long as the plaintiff selected the forum for legitimate reasons); <u>Kravas v. Private Adoption Servs.</u>, CA No. 08-1583, 2009 U.S. Dist. LEXIS 119043, *5 (W.D. Pa. Dec. 22, 2009); <u>Teleconference Sys. v. Procter & Gamble Pharms.</u>, CA Nos. 09-200 and 09-632, 2009 U.S. Dist. LEXIS 110884, *20 (D. Del. Nov. 25, 2009); <u>CertainTeed Corp. v. Nichiha USA, Inc.</u>, CA No. 09-3932, 2009 U.S. Dist. LEXIS 101354, *18 (E.D. Pa. Oct. 30, 2009); *see also* <u>RBC Bank (USA) v. Riley, Riper, Hollin & Colagreco</u>, CA No. 09-431, 2009 U.S. Dist. LEXIS 73359, *10 (D. N.J. Aug. 19, 2009) (even where the plaintiff chose to litigate in a forum outside its home state, its choice would be given deference, although not "enhanced deference.")

In the absence of related litigation elsewhere, given the preference of courts to uphold the plaintiff's choice of forum, we find this factor weighs in favor of denying the motion to transfer.

2. *The forum in which the claims arose:* Defendant argues that none of the freight related to the unpaid invoices was shipped to or from Pennsylvania, the bills of lading for the freight shipments in question were not executed or performed in Pennsylvania, and the alleged breach of the implied contract

8

occurred in Michigan where England's offices for its Logistics SCE
subsidiary are located.  Thus, this case has a greater nexus to the
Eastern District of Michigan than to the Western District of
Pennsylvania.  (Def.'s Brief at 6.)  Plaintiff does not explicitly
address this factor.

We are not persuaded that the freight shipping points or where
the bills of lading were executed play any significant role in
determining an appropriate venue in this case.  As alleged in the
Complaint, the crux of this matter is the breach of an implied
contract between the parties which required England to pay PLS's
invoices for shipment of freight for four of Defendant's customers.
The England subsidiary which failed to make the payments was
located in Michigan, although Defendant is headquartered in Utah.
A breach of contract claim arises where the defendant fails to make
the necessary payments, not where the plaintiff fails to receive
those payments.  *See*, e.g., <u>Cottman Transmission Sys. v. Martino</u>,
36 F.3d 291, 295 (3d Cir. 1994) (Michigan defendant's failure to
remit payments and return materials to plaintiff in Pennsylvania
was an omission which occurred in Michigan, even though the result
was the plaintiff's non-receipt of those items in Pennsylvania); <u>De</u>
<u>Lage Landen Fin. Servs. v. Elite Tech. (NY), Inc.</u>, CA No. 09-1538,
2009 U.S. Dist. LEXIS 91616, *7  (E.D. Pa. Sept. 30, 2009) (same.)
This factor would therefore tend to favor venue in either Michigan
where the non-paying subsidiary is located or Utah where Defendant

England is headquartered.  While the fact that an alleged breach of contract occurred in another district does not by itself justify transfer to that court (*see* Plum Tree, Inc. v. Stockment, 488 F.2d 754, 757, n.3 (3d Cir. 1973)), we do conclude, however, that this factor weighs in favor of transfer.

>    3.  *The convenience of the parties:*  Jumara directs that when a district court considers the convenience of the parties, it should do so in terms of "their relative physical and financial condition."  Jumara, 55 F.3d at 879.  Plaintiff argues that Defendant's complete failure to address this factor is "likely precipitated by the fact that England is a nationwide conglomerate with operations and resources far exceeding those of PLS, a local company from Beaver County, Pennsylvania," a factor which "clearly weighs against transfer."  (Plf.'s Memo at 5.)

The Complaint alleges that PLS arranges freight transportation for its clients "with independent carriers who are members of PLS' network of more than 5,000 independent carriers."  (Complaint, ¶¶ 3, 18, 21.)  This would tend to imply that PLS is something more than a local "mom-and-pop" operation even if it is not as large as England.  Each party would undoubtedly find it more financially advantageous to litigate in its preferred forum, but Plaintiff does not argue it could not afford to proceed in the Eastern District of Michigan.  However, the Court is unable to identify any persuasive evidence in the record which would lead us to conclude that this

factor weighs strongly in favor of either party.  We therefore give it no weight.

       4.   *The availability or unavailability of witnesses:* This factor focuses on the extent to which "witnesses may actually be unavailable for trial in one of the fora." Jumara, 55 F.3d at 879.  At least one court has recognized that the convenience of non-party witnesses may be "the most powerful factor" in the transfer analysis.  In re Consolidated Parlodel Litig., 22 F. Supp.2d 320, 324 (D. N.J. 1998).  Other courts have concluded that this factor is at least "particularly significant," especially with regard to fact witnesses, as compared to employee-witnesses or expert witnesses.  *See*, e.g., Coppola v. Ferrellgas, CA No. 07-4023, 2008 U.S. Dist. LEXIS 17246, *14-*15 (E.D. Pa. Mar. 6, 2008), and Matt v. Baxter Healthcare Corp., 74 F. Supp.2d 467, 469 (E.D. Pa. 1999).[2]

England argues that witnesses are located "for the most part" in the Eastern District of Michigan, in particular, witnesses from England itself in Taylor, and from Citation in Novi.  Moreover,

---

[2]  The Court finds the case on which Defendant relies for this general proposition, Lindley v. Caterpillar, Inc., 93 F. Supp.2d 615 (E.D. Pa. 2000), is not particularly persuasive.  There, the district court agreed that the matter should be transferred from the Eastern District of Pennsylvania to the Middle District of Florida.  However, the plaintiff in that case, a citizen and resident of Florida, did not live or work in the Eastern District, the events did not take place in Pennsylvania, the fact that his counsel was located in Philadelphia was deemed irrelevant, and the claims would adjudicated under Florida or Illinois rather than Pennsylvania law.  Id. at 617-618.  The fact that most of the identified witnesses seemed to be in Florida or Illinois was another, but not the solely determinative, fact.

England will be unable to compel unwilling witnesses from Hawthorn and Citation to appear in the Western District of Pennsylvania for deposition or trial because those companies are not parties in this action and may not be subject to the subpoena powers of this Court.   (Def.'s Brief at 4-5.)[3]

We can quickly address the question of those witnesses who are England employees:   "the convenience of witness[es] that are employees of a party carries no weight because the parties are obligated to procure their attendance at trial." Mentor Graphics Corp. v. Quickturn Design Sys., 77 F. Supp.2d 505, 510 (D. Del. 1999); *see also* Coppola, 2008 U.S. Dist. LEXIS 17246 at *14. Equally quickly we conclude that the difficulty or inconvenience associated with taking depositions of witnesses located in Michigan or elsewhere outside this district is entitled to relatively little weight:   "The cost of obtaining attendance of willing witnesses is. . .not persuasive given the ability to take videotaped trial depositions."   ICT of N. Am., Inc. v. Team Air Express, Inc., CA No. 00-3959, 2000 U.S. Dist. LEXIS 16420, *4 (E.D. Pa. Nov. 2, 2000).   Defendant also argues that the inability to compel unwilling witnesses to travel to Pennsylvania because they may not

---

[3]   England further argues that witnesses from Hawthorn will be present in the Eastern District of Michigan because of the pending litigation brought by England there and that the cost for those same witnesses to appear here would be unreasonable in light of the fact that they would be needed to participate in the Michigan suit. (Def.'s Brief at 4-5.)   These reasons need not be considered by this Court since that litigation has been dismissed.

be subject to the subpoena powers of this Court and the unreasonable costs of travel for any witnesses are additional factors to support a transfer to the Michigan court. (Def.'s Brief at 4-5.) We cannot determine the relative reasonableness of the costs of travel for potential witnesses (except, perhaps, Citation) because Defendant has not identified them or their locations. Moreover, while transfer to Michigan might shift the burden of seeking subpoena power from the court in which some witnesses are located from Defendant to Plaintiff, the burden itself would not be lessened. *See* <u>Labrot v. John Elway Chrysler Jeep</u>, 436 F. Supp.2d 729, 731 (E.D. Pa. 2006).

Setting aside the fact that transferring this matter to Michigan would create for PLS a mirror image of the difficulties Defendant's witnesses might encounter by being forced to appear in this district, as Plaintiff points out, England's claims regarding the unavailability of witnesses is unsupported by any factual evidence, contrary to the requirements of the Third Circuit Court of Appeals. In <u>Plum Tree</u>, *supra*, the district court had granted the defendants' motion to transfer, even though the motion was unsupported by evidence showing it would be appropriate. In considering the plaintiffs' petition for a writ of mandamus, the Court of Appeals agreed that "there was no evidence before the district court upon which it could base a finding that a transfer order was justified." <u>Plum Tree</u>, 488 F.2d at 756. In particular,

13

the defendants "did not support their motion to transfer with any affidavits, depositions, stipulations, or other documents containing facts that would tend to establish the necessary elements for a transfer under 28 U.S.C. § 1404(a)." <u>Id.</u> at 756-757. The Court continued in a footnote to provide examples of such evidence, e.g.,

> the names and addresses of witnesses whom the moving party plans to call,. . .affidavits showing the materiality of the matter to which these witnesses will testify, statements by the moving parties of the business difficulties or personal hardships that might result from their having to defend against the suit in the district court where it was originally brought, affidavits concerning the relative ease of access to sources of documentary evidence, and other materials where appropriate.

<u>Id.</u> at 757, n.2.

Here, England has similarly failed to provide such evidence. In comparable circumstances, district courts have not hesitated to conclude that the "convenience of witnesses" factor weighs against transfer or is, at best, neutral. <i>See</i>, e.g., <u>Sadler v. Hallsmith Sysco Food Servs.</u>, CA No. 08-4423, 2009 U.S. Dist. LEXIS 33682, *9-*10 (D.N.J. Apr. 21, 2009); <u>Olympia Steel Bldgs. Sys. Corp v. Gen. Steel Domestic Sales, LLC</u>, CA No. 06-1597, 2007 U.S. Dist. LEXIS 45505, *26-*27 (W.D. Pa. June 22, 2007); and <u>Labrot</u>, 436 F. Supp.2d at 731, n.3. Since Defendant has not identified specific witnesses from Hawthorn (headquartered in Ohio), Citation, Intermet or Alliance (each of which is either a Delaware corporation or limited liability company), we are unable to determine if it would be more

14

or less convenient for such witnesses to appear in Pennsylvania or
Michigan.    We conclude Defendant has not carried its burden of
showing that the convenience of witnesses strongly supports
transfer to the Eastern District of Michigan.

> 5.    *The location of relevant books and records to the
extent these could not be produced in the original forum:*  As with
the previous factor, Defendant argues – without evidentiary support
– that books and records essential to litigating this matter are
located largely at its offices or at the offices of its customer
Citation, both of which are in Michigan.    (Def.'s Brief at 4.)
Significantly, England never argues that these records "could not
be produced" in this district, only that invoices and other records
are located in Michigan.

In recent years, courts have found this factor to carry less
weight than it might have in the past.  As one court has noted, "In
the digital age, most books and records that are of use in
litigation. . .can be scanned onto digital medium, such as a CD or
DVD disc, and replayed in a courtroom.  The movement of documents
is no longer any major factor in a § 1404(a) analysis."  <u>Colacicco
v. Apotex, Inc.</u>, CA No. 05-5500, 2009 U.S. Dist. LEXIS 115270, *11
(E.D. Pa. Dec. 10, 2009); *see also* <u>Olympia Steel</u>, 2007 U.S. Dist.
LEXIS 45505 at *27-*28; *but compare* <u>In re Amkor Technology</u>, CA No.
06-298, 2006 U.S. Dist. LEXIS 93931, *19 (E.D. Pa. Dec. 28, 2006),
finding this factor weighed in favor of defendants because records

were located in their home forum.

While some relevant records may be located in the Eastern District of Michigan, there is no clear evidence where Alliance, Hawthorn, and Intermet records might be found and it is certain that PLS retains its books and records in this District.  Nor are we aware of any reason why England cannot produce its records here without difficulty.  Therefore, we conclude this factor does not weigh in favor of transfer.

      C.   <u>Public Factors</u>

        "Consideration of public factors under <u>Jumara</u> requires the court to evaluate each forum and determine where the litigation can proceed in the most efficient and inexpensive fashion." <u>In re Amkor Tech.</u>, 2006 U.S. Dist. LEXIS 93931 at *20-*21.  As noted above, the public factors include aspects of the particular case which would make a trial easier, more expeditious, or less expensive in one forum than in the other; administrative or timing difficulties arising from court congestion; the local interest in deciding local controversies at home; the public policies of the competing fora; and the familiarity of the trial judge with applicable state law in diversity cases.

Defendant fails to address any of these factors except the question of the state law to be applied in this case.  Therefore, we conclude England must believe those factors either weigh in favor of Plaintiff or are neutral or irrelevant to this action.

England does argue that the contractual relationship between Hawthorn and itself is governed by Michigan law which in turn would have an "impact on the interpretation of the contractual obligations involving PLS' unpaid invoices." (Def.'s Brief at 5.)

We recognize that England and Hawthorn agreed that Michigan law would apply to the interpretation of the initial transportation management services agreement between those parties and of the subsequent modification agreement. (*See* Motion to Dismiss, Doc. No.7, Exhs. C and D, respectively.) "There is an appropriateness. . . in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle the problems in conflicts of laws, and in law foreign to itself." Gulf Oil, 330 U.S. at 509. "Where a choice of law clause is present in a contract, the court. . .give[s] great weight to it in determining the proper forum." Optimal Interiors, LLC v. Hon Co., CA No. 09-1906, 2009 U.S. Dist. LEXIS 107139, *11 (E.D. Pa. Nov. 13, 2009), *quoting* Motors Drives & Controls, Inc. v. Greene Techs., CA No. 05-5505, 2006 U.S. Dist. LEXIS 9793, *5 (E.D. Pa. Mar. 10, 2006). "[A] federal court generally has greater expertise in interpreting and applying the law of its home state than federal courts domiciled in foreign jurisdictions." Optimal Interiors, id. However, as has been noted elsewhere, "federal district courts are regularly called upon to interpret the laws of jurisdictions outside of the states

17

in which they sit." <u>Yocham v. Novartis Pharms. Corp.</u>, 565 F. Supp.2d 554, 560 (D. N.J. 2008), further noting that "[d]isturbing Plaintiff's choice of forum in order to spare this Court the trouble of interpreting Texas law is simply not called for here." England has not argued that Michigan, rather than Pennsylvania, law would apply to the implied contract between itself and PLS and, assuming this Court would be called upon to interpret Michigan state law regarding the contract between England and Hawthorn,[4] Defendant has not pointed to any particular characteristics of that law which would make it significantly difficult to understand and apply. <i>See</i> <u>Sadler</u>, 2009 U.S. Dist. LEXIS 33682 at *11 (where the state law at issue is relatively straightforward, this factor is not given much weight in the transfer analysis.)

D. Conclusion

Having considered all the criteria identified in <u>Jumara</u>, we conclude the only factor which weighs strongly in favor of transfer to the Eastern District of Michigan is that the primary claim in this case, i.e., the alleged breach of contract by England, arose in that forum. Given that Plaintiff's choice of forum is paramount, that factor weighs heavily in favor of this Court retaining the case. All other factors have either been ignored by England, are without evidentiary support, or are equally

---

[4] Nothing in the record indicates that comparable choice of law provisions apply to the contracts between England and the other three clients.

balanced between the parties. Now that the related litigation in Michigan has been dismissed, this motion appears to be based simply on the fact that the proposed venue would be more convenient for Defendant, which is an insufficient reason to transfer venue. *See* Dinterman v. Nationwide Mut. Ins. Co., 26 F. Supp.2d 747, 749-750 (E.D. Pa. 1998) (a  court should not transfer a case if doing so would merely switch the inconvenience from defendant to plaintiff.) We conclude therefore, that this Court should retain jurisdiction of this matter and deny the motion to transfer. An appropriate Order follows.

January __14__ , 2010          *William L. Standish*
                               William L. Standish
                               United States District Judge

19